UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-108-6 |
| ANTHONY QUAMAINE BROWN | : | (JUDGE MANNION) |
| Defendant | : | |

**MEMORANDUM**

The court denied Defendant Anthony Brown's motion to suppress (Doc. 337) communications intercepted over a wiretap. (Doc. 455). After Brown pleaded guilty on the condition he be able to appeal the court's denial of his suppression motion, he appealed, and the Third Circuit Court of Appeals remanded this matter back to this court "for an evidentiary hearing on the suppression motion." (Doc. 739-2 at 2). The court conducted an evidentiary hearing on September 22, 2023, and, after a review of all the evidence presented, finds it properly did not suppress the wiretap evidence.

I.   BACKGROUND

The parties are familiar with the procedural and factual background of this matter, which the court will not fully recount here. (*See* Doc. 454 at 2–6, Doc. 739-2 at 2–5). In relevant part, on May 18, 2021, Brown was charged with one count of conspiracy to distribute and possess with intent to distribute

heroin and fentanyl in violation of 21 U.S.C. §846. He filed a motion to suppress his communications made to co-conspirator Robert Thompson, whose phone was wiretapped by the government. The court agreed with the government that the communications were not illegally intercepted outside the timeframe prescribed by the court's order permitting the wiretap and denied the motion to suppress. Subsequently, Brown entered a conditional guilty plea to conspiracy to distribute and possess with intent to distribute at least 1 but less than 3 kilograms of heroin and at least 40 but less than 160 grams of fentanyl. His conditional plea reserved the right to appeal only the denial of the motion to suppress. The court sentenced Brown to 180 months imprisonment. Brown appealed, and the Third Circuit remanded this matter for an evidentiary hearing on the motion to suppress.

## II.     LEGAL STANDARD

Under 18 U.S.C. §2518(10)(a)(iii), a defendant can "move to suppress the contents of any wire or oral communication intercepted" if "the interception was not made in conformity with the order of authorization or approval." If electronic surveillance is conducted without a court's authorization, the search is unlawful and subject to suppression. *United States v. Cafero*, 473 F.2d 489, 497–98 (3d Cir. 1973). "The traditional

Fourth Amendment principles that apply to property searches govern probable cause determinations under the federal and/or state wiretap statutes. *United States v. Tutis*, 167 F.Supp.3d 683, 695 (D.N.J. March 8, 2016) (citing *United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983)).

### III.   DISCUSSION

Before addressing the evidence presented at the hearing, it makes sense to frame the arguments of Brown and the government related to the dispute of material fact for which the Third Circuit ordered a hearing.

On April 7, 2020, the court authorized a thirty-day wiretap for wire and electronic communications of Thompson's cell phone. On June 1, 2020, FBI Agent Shane Yelland signed a master affidavit of probable cause in support of a search warrant, in which he stated the "[i]nterception of wire and electronic communications over THOMPSON's 'Target Phone 1' commenced on March 28, 2020." Brown argues this statement establishes the government began intercepting wire communications eleven days before the April 7, 2020, start date authorized by court order. He avers that this explains why the FBI knew whom he was before an April 4, 2020, interview with a cooperating witness. The government retorts the March 28 date in the affidavit "was an obvious typographical error," and, in support, points out that

the affidavit references calls and texts between Brown and Thompson starting on April 8th and continuing through April 11th, all within the bounds of the wiretap order. Consequently, according to the Third Circuit, there is a dispute of material fact as to whether the government began intercepting communications from Thompson's phone prior to April 7, 2020. And it is for that dispute a hearing was held.

The evidence presented at the hearing confirms the government did not begin intercepting Thompson's communications prior to April 7, 2020. Agent Yelland, the case agent and affiant of the wiretap, testified at the hearing. Agent Yelland explained he and his team were on a wiretap of Brown's codefendant, Tysheen Gott, and through that wiretap were able to identify Thompson as a potential coconspirator, which led to the government seeking wiretap authorization for Thompson. Tr. at 11.[1] Agent Yelland subsequently sought a warrant to tap Thompson's phone, which the court authorized on April 7, 2020. Agent Yelland testified under oath that at no time prior to April 7, 2020, did he or any member of his team start to intercept communications from Thompson's cellular device. Tr. at 16, 26–27.

---

[1] "Tr." refers to the hearing transcript, which is attached to this memorandum as attachment 1.

Next, Agent Yelland explained the government secured an indictment, and thereafter Agent Yelland and his team planned to arrest Brown and his indicted codefendants and secure search warrants. Tr. at 19–20. Agent Yelland drafted and signed the master affidavit in support the search warrants. Tr. at 20. Agent Yelland testified that to input relevant dates into the master affidavit, including the March 28, 2020, date for the purported genesis of the Thompson wiretap, he referenced the table on a whiteboard he and his team kept which noted the relevant start and stop dates for the various wiretaps involved in this case. Tr. at 22–24, 37–38; Government's Ex. 5. Agent Yelland testified that, when inserting the date Thompson's wiretap began, he inadvertently read the table across instead of downwards, causing him to input the wrong date—a "typographical error," as he characterized it. Tr. at 24, 26. The government's exhibit depicting the whiteboard table confirms that the date of March 28 would have been inserted if Agent Yelland incorrectly read the table across instead of downwards. Government's Ex. 5.

Agent Yelland proceeded to testify regarding the statement in the master affidavit that a cooperating witness was interviewed on April 4, 2020, regarding his or her knowledge of Brown. Agent Yelland testified that Brown was identified previously in the investigation, though he did not remember by

whom or exactly when, and Brown had already been indicted by the time Agent Yelland drafted the affidavit. Tr. at 28, 42–43.

Finally, Agent Yelland testified that he conferred with Agent Michael Bushman, a member of the "tech unit" of the FBI in Philadelphia, regarding the wiretap of Thompson's phone. Bushman submitted an affidavit swearing he reviewed the FBI wiretap collection system which presents the results of full content audio and SMS interception and confirmed the system was set to begin interception of Thompson's phone on April 7, 2020. Tr. at 31; Government's Ex. 6. The court finds Agent Yelland's testimony credible.

Brown put on one witness at the hearing, Lori Possinger, who, in the court's view, did not contradict the evidence presented by the government that the Thompson wiretap began no earlier than April 7, 2020.

The court has considered all of the evidence of record and concludes the government has demonstrated the Thompson wiretap did not begin before the date authorized. Thus, the wiretap was done in conformity with the order of authorization, and the court properly denied the defendant's motion to suppress. This being the only matter for which the Third Circuit remanded the case, this case is closed. As such, the court will **DISMISS** Brown's pending motion to dismiss the information of prior conviction as moot. (Doc. 773).

## IV. CONCLUSION

In light of the foregoing, the court finds it properly denied Brown's motion to suppress (Doc. 337). An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 2, 2023**
20-108-10